IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-30034 |
| | ) | |
| MOHAMMED ALI SALEH, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S AMENDED MOTION FOR COMPASSIONATE RELEASE

The United States of America by its attorneys, John C. Milhiser,

United States Attorney for the Central District of Illinois, and Timothy

A. Bass, Assistant United States Attorney, respectfully submits its

response in opposition to the defendant's Amended Motion for

Compassionate Release and states as follows:

### I.     Background

In 2017, Defendant Mohammed Ali Saleh pleaded guilty pursuant

to a plea agreement to an indictment charging him with conspiracy to

distribute a controlled substance, namely, synthetic cannabinoids, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). (R.19)[1] As part of the

charged conspiracy, from on or about January 2015, and continuing to

on or about May 10, 2016, he agreed with others to distribute and did

regularly distribute synthetic cannabinoids or K-2, containing XLR-11

and AB FUBINACA, from his retail store, Gold Star Tobacco and Vape,

in Decatur, Illinois. (PSR ¶¶11-23) Defendant Saleh generated

substantial proceeds from the sale of the synthetic cannabinoids or K-2,

which were transferred to him in Hamtramck, Michigan. (PSR ¶11-23)

   At sentencing in 2018, Defendant Saleh's final offense level was

calculated at 33 and his criminal history category was determined to be

I, resulting in an advisory Sentencing Guidelines range (Zone C) of 135

to 168 months of imprisonment and a minimum of 3 years to life of

supervised release. (PSR ¶¶30-39, 43, 75-78) The offense level

determination was based on a substantial drug quantity of 160.89

kilograms of synthetic cannabinoids and a role enhancement for being

an organizer, leader, manager, or supervisor in the offense. (PSR ¶33)

In addition, although Defendant Saleh's criminal history category was I,

---

[1] References to documents in the record are to the docket number on this Court's
docket sheet, e.g., "R. "; references to the presentence report are to "PSR."

he has a prior conviction for assault with a dangerous weapon. (PSR ¶41) Following a motion by the government, this Court sentenced Defendant Saleh to 78 months of imprisonment and 3 years of supervised release.

On October 20, 2020, Defendant Saleh filed the instant amended motion for compassionate release. (R.44)

## II.  The Defendant's Expected Release Date and Medical Status

According to the Bureau of Prisons (BOP), Defendant Saleh is serving his sentence at FCI - Morgantown, which has a population of 481 inmates. https://www.bop.gov/locations/institutions/mrg/. His expected release date is January 21, 2024. Defendant Saleh has no disciplinary record. He has been assigned a minimum risk recidivism level.

According further to BOP, there are 0 inmates and 2 staff members at FCI – Morgantown with confirmed cases of COVID-19, and 5 inmates and 4 staff members who have recovered.

According to his BOP medical records, Defendant Saleh is 44 years old and has been treated for Type 2 diabetes mellitus for which he receives medication. He has also been diagnosed with retinopathy;

inguinal hernia; lower back pain; and bradycardia, unspecified.
According to his most recent medical records in April 2020, Defendant
Saleh appeared well.

According to the probation office's compassionate release report,
Defendant Saleh's proposed release plan of residing with his wife and
children in Hamtramck, Michigan is suitable.

## III.  Argument

The compassionate release statute provides, in pertinent part:

The court may not modify a term of imprisonment once
it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the
defendant has fully exhausted all administrative rights
to appeal a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse of 30 days
from the receipt of such a request by the warden of the
defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of
probation or supervised release with or without
conditions that does not exceed the unserved portion of
the original term of imprisonment), after considering the
factors set forth in section 3553(a) to the extent that they
are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such
a reduction . . .

18 U.S.C. § 3582(c)(1)(A).

In this case, it appears that Defendant Saleh has satisfied the statutory exhaustion requirement. In addition, the government concedes that his medical records reflect that he suffers from Type 2 diabetes, which, according to the CDC, results in an "increased risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant Saleh's motion, however, fails on the merits.

First, although Defendant Saleh suffers from a health condition – Type 2 diabetes -- that results in an increased risk of severe illness from COVID-19 and therefore presents a compelling and extraordinary reason to consider his motion, he is receiving medication and his overall condition appears to be stable. Accordingly, Defendant Saleh does not appear to be suffering from "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

Second, the current COVID-19 epidemic, although undoubtedly extreme and serious, is not (contrary to Defendant Saleh's argument) by

itself an "extraordinary and compelling reason" to grant a motion for compassionate release. As Judge Shadid has held, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release— if it could, every inmate in that prison could obtain release." *United States v. Cabrera*, 2020 WL 2549941, at * 4 (C.D. Ill May 19, 2020); *see also United States v. Hamlin*, 2020 WL 1703848, at *5 (E.D. Wis. Apr. 8, 2020) ("Several courts have noted that the existence of the COVID-19 crisis alone is not sufficient to justify release if traditional factors warrant detention."). Defendant Saleh has not established that FCI-Morgantown, which has 0 inmates and 2 staff members with confirmed cases of COVID-19, and 5 inmates and 4 staff members who have recovered, is facing a serious outbreak of COVID-19 infections or is unable to successfully contain any outbreak.

Third, a reduction in Defendant Saleh's sentence is inconsistent with the factors in 18 U.S.C. § 3553(a), namely, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed—to reflect the seriousness of the offense …"; and "to protect the public from further crimes of the defendant[.]" The defendant was convicted of a serious

6

offense involving a substantial quantity of synthetic cannabinoids; he played a managerial role in the offense, which generated substantial proceeds to himself; he has a prior conviction involving violence; and he has not yet served one-half of his sentence. Given these factors, and while Defendant Saleh's conduct within BOP is commendable, the government respectfully submits that a reduction in sentence is inappropriate.

Finally, to the extent that Defendant Saleh is requesting early release to home confinement or a halfway house, such a request is also inappropriate because "a district court has no jurisdiction to order home confinement under the CARES Act, as that decision is reserved to BOP." *United States v. Gentry*, 2020 WL 2131001, at *5 (W.D. La. May 5, 2020); *see also United States v. Lovelace*, 2014 WL 4446176, at *2 (N.D. Ga. Sept. 2014) ("[T]he Court has no authority to grant Defendant's request and order the Bureau of Prisons to release Defendant to a halfway house.") (citing 18 U.S.C. §§ 3621(b) & (b)(5)). The Court may, however, order home confinement as a condition of supervised release.

Accordingly, the government respectfully requests that Defendant

Saleh's motion be denied.

JOHN C. MILHISER
UNITED STATES ATTORNEY


BY:  *s/Timothy A. Bass*
     Timothy A. Bass, Bar No. MO 45344
     Assistant United States Attorney
     318 South Sixth Street
     Springfield, IL 62701
     Phone: (217) 492-4450
     Fax: (217) 492-4044
     tim.bass@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I filed the foregoing directly with the Clerk of Court using the CM/ECF system, which will send a copy to:

Counsel of record

_s/Timothy A. Bass_                              .
Timothy A. Bass, Bar No. MO 45344
Assistant United States Attorney
318 S. Sixth Street
Springfield, IL 62701
Phone: 217/492-4450
Fax: 217/492-4044
tim.bass@usdoj.gov