E-FILED
Friday, 08 October, 2021  03:35:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-30034 |
| | ) | |
| MOHAMMED ALI SALEH, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

The Defendant, Mohammed Ali Saleh, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and The CARES Act, Pub. L. No. 116-136 (Mar. 27, 2020), for extraordinary and compelling reasons.

In support of the motion, Saleh cites the continuing COVID-19 pandemic at BOP locations across the country, Saleh's Type II diabetes mellitus (which enhances his risk of severe COVID-19 complications, including death), and his status as an overweight individual, in addition to Saleh's exemplary behavior while in custody and extensive rehabilitative efforts.

## I.    BACKGROUND

On May 31, 2018, the Court sentenced Saleh to serve a total of 78 months' imprisonment, to be followed by a 3-year term of supervised release, following his guilty plea to conspiracy to distribute synthetic marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).  The sentence imposed was well below the advisory sentencing guideline range of 135 to 168 months' imprisonment.  Saleh is currently housed at Morgantown FCI, with a projected release date of January 21, 2024 according to the BOP website's inmate locator.

Saleh is a 45-year old male of middle eastern descent.  He is 5 feet 7 inches tall and weighs 168 pounds, resulting in a Body Mass Index ("BMI") of 26.3.[1]  The Centers for Disease Control ("CDC") has recognized that overweight individuals may be at increased risk from COVID-19.  The CDC has also recognized that overweight individuals like Saleh are at a greater risk for chronic conditions such as high blood pressure, diabetes and high cholesterol, which enhances the risk for COVID-19 complications including death.

Saleh suffers from Type II diabetes mellitus.  The CDC has found that having Type II diabetes can make individuals more likely to get severely ill from COVID-19.    www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

---

[1]According to the BMI tables, a BMI of 25 to 29.9 is considered Overweight.

medical-conditions.html (last checked October 4, 2021).  Severe illness means that an individual may need hospitalization, intensive care, a ventilator, or may even die as a result.  *Id*.  He has also been diagnosed with retinopathy; inguinal hernia; lower back pain; and bradycardia, unspecified.

According to a Supplement to the Saleh's motion for compassionate release, Saleh did contract the COVID-19 virus in January 2021.

The Government states that while Saleh's Type II diabetes presents a compelling and extraordinary reason to consider his motion, the motion still fails on the merits.  Saleh is receiving medication and his overall condition appears to be stable.  Additionally, the availability of the vaccine changes the analysis.

Saleh's compassionate release motion is not based solely on the fear of contracting COVID-19.  He also cites his Type II diabetes and the fact that he is overweight, in addition to Saleh's exemplary behavior while in custody and his extensive rehabilitative efforts.

There are currently 131,626 federal inmates at BOP-managed institutions, with approximately 36,000 BOP staff.  www.bop.gov/coronavirus (last checked October 4, 2021).  There are 480 inmates and 497 BOP staff who are currently positive for COVID-19.  *Id*.  Currently, 42,988 inmates and 7,773 staff have

recovered.  *Id*.  There have been 261 federal inmate deaths and 6 BOP staff member deaths due to COVID-19.  *Id*.

At Morgantown FCI, 14 inmates and 8 staff members are currently positive for COVID-19, while 155 inmates and 38 staff have recovered.  There have been no deaths due to COVID-19 among inmates or staff at the facility.  *Id*.

"Since before the first dose was administered by agency staff on December 16, 2020, the Bureau has been committed to making the vaccine available to all staff and inmates wishing to receive it." www.bop.gov/resources/news20210715_vaccine_200k.jsp.  At Morgantown FCI, 96 staff members and 323 inmates are fully inoculated.  *Id*.  FCI Morgantown has 404 total inmates, *see* www.bop.gov/locations/institutions/mrg, so nearly 80% of the inmate population are vaccinated.

It is unclear whether Saleh is fully vaccinated.  Presumably, Saleh at least has had the opportunity to get vaccinated if he wished.  This is an important consideration because "COVID-19 vaccines are safe and effective at preventing COVID-19, including severe illness and death." www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.  The vaccines are effective against the variants of the virus, including the Delta variant currently circulating in the United States. *Id*.  "COVID-19 vaccines also help keep you from getting seriously ill even if you

do get COVID-19." www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. "People who have a condition or are taking medications that weaken their immune system may not be protected even if they are fully vaccinated." *Id*. Such individuals should continue taking all precautions recommended for those who are unvaccinated. *Id*.

## II. DISCUSSION

### (A)

Under the First Step Act, signed into law on December 21, 2018, defendants may now file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary and compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A). If properly invoked by the Government, the exhaustion requirement must be enforced. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

There is no dispute that Saleh met the statutory exhaustion requirement.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions.  *See* 18 U.S.C. § 3582(c)(1)(A).  If extraordinary and compelling reasons are established, the Court should also consider post-offense developments under § 3553(a).  *See Pepper v. United States*, 562 U.S. 476, 490-93 (2011).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release provision.  *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).  "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)."  *Id.*  Until U.S.S.G. § 1B1.13 is amended, there is not an "applicable" policy statement for courts to rely on in considering prisoner-initiated applications for compassionate release.  *See id.* at 1181.

For most prisoners, the availability of vaccines for COVID-19 "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."  *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).  There is nothing in the record which shows that Saleh is

medically or otherwise unable to receive the vaccine. Accordingly, the risk of COVID-19 does not alone provide a basis for Saleh to obtain compassionate release.

(B)

In his motion Saleh claims that, in addition to being at high risk for severe COVID-19 complications, compassionate release is warranted due to his exemplary prison conduct, rehabilitative efforts and the circumstances created by the still-exiting pandemic. Saleh asks for compassionate release and for the Court to order him to serve the remainder of his sentence on home confinement, to spare him the risk of exposure and possible death from contracting the virus.

Saleh has served over three years of his six and one-half year prison term. He has just over two years left on his sentence. Saleh notes he has been a model inmate while making extensive rehabilitation efforts. He obtained his GED while in prison and has taken educational courses including infectious and communicable diseases, anatomy and physiology, technology, money smart, small business management, typing, civil rights, basic real estate, Spanish, nutrition, home renovation and parenting. In fact, Saleh has taken over 40 classes while in custody.

Saleh has also completed drug education. He has acted as a "resilience guide" for psychology since 2019. He is participating in the DBT skills course in Psychology and the anger management workshop. He has completed the anxiety

and worry workshop.  He is a member of the suicide companion cadre in Psychology services.

Additionally, Saleh has had no disciplinary infractions while in custody. Saleh claims he has been a model inmate and taken advantage of all opportunities for rehabilitation and has shown that he has obtained sufficient educational training, pursuant to 18 U.S.C. § 3553(a)(2)(D).  The Defendant contends that the sentence already served, in addition to a period of home confinement and supervised release, is sufficient upon considering the applicable sentencing factors.

Saleh does not have an extensive criminal history.  He has one violent offense that occurred approximately 20 years before the criminal activity in this case.  BOP has classified Saleh's risk of reoffending as minimum.

Saleh has a wife and seven children at home, ranging in age from 20 years old to 2 years old.

Saleh's conduct and rehabilitation while in BOP custody is particularly commendable.   However, the Court is unable to conclude that warrants compassionate release when Saleh still has more than two years left to serve.  While the Court believes Saleh is unlikely to reoffend, general deterrence is still an important consideration.  Saleh played a major role in distributing a significant amount of synthetic cannabinoids and initially faced a guideline range of 135 to 168

months.  For the reasons discussed at sentencing, the Court determined that a sentence significantly lower than the guideline range was appropriate.  Upon considering factors such as the nature and circumstances of the offense, providing just punishment and general deterrence, in addition to the need to avoid unwarranted sentence disparities with similarly situated defendants, the Court is unable now to conclude that extraordinary and compelling reasons warrant compassionate release.

Ergo, Defendant Mohammed Ali Saleh's Amended Motion for Compassionate Release [d/e 44] is DENIED.

The Court will terminate Defendant Saleh's *pro se* Motions [d/e 40 & 41].

ENTER: October 8, 2021

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge